**DELVIN DESHAWN SMITH**
NAME
**16579-112**
PRISON IDENTIFICATION / BOOKING NUMBER
**FCI VICTORVILLE 1, P.O. Box 5300**
ADDRESS OR PLACE OF CONFINEMENT
**Adelanto, California 92301**

NOTE:  It is your responsibility to notify the Clerk of Court in writing of any change of address.

NOTE:  If represented by an attorney; his name, address and telephone number.

FILED

2009 MAR 18 PM 5: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br><br> v. <br><br> **DELVIN DESHAWN SMITH** <br> FULL NAME OF MOVANT <br> *(Include name under which you were convicted)* <br><br> Petitioner | CASE NUMBER <br> **CV 09  1881** * JFW <br> To be supplied by the Clerk of the United States District Court. <br><br> CR- **05-00986-JFW** <br> Criminal case under which sentence was imposed. <br><br> **MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY** <br> 28 U.S.C. § 2255 |

## INSTRUCTIONS AND INFORMATION - READ CAREFULLY

This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form. Where more room is needed to answer any question use reverse side of sheet.

Additional pages are not permitted. No citation or authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

Upon receipt, your motion will be filed if it is in proper order. **NO FEE** is required with this motion.

If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed in forma pauperis, in which event you must execute the declaration on the last page, setting forth information establishing your inability to pay costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each judgment.

Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

When the motion is fully completed, the original and three (3) copies must be mailed to the Clerk of the United States District Court, whose address is 312 North Spring Street, Los Angeles, California 90012.

**ATTENTION: Intake/Docket Section**

Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 16 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## MOTION

1. Name and location of court which entered judgment of conviction under attack:

   USDC for the Central Distict of California, 312 N. Spring St., L.A., CA 90012

2. Date of judgment of conviction: July 18, 2006

3. Length of sentence: 204 months          Sentencing judge: John F. Walker, USDJ

4. Nature of offense or offenses for which you were convicted:

   Count one- pwid cocaine base in violation of 21 U.S.C. § 841(a);

   Count two- carrying a firearm during a drug trafficking offense in violation of
           18 U.S.C. § 924(c);

   Count three- felon in possession of a firearm in violation of 18 U.S.C. § 922(g).


5. What was your plea? *(check one)*

   ☒ Not guilty
   ☐ Guilty
   ☐ Nolo Contendere

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:


6. Kind of trial: *(check one)*

   ☒ Jury
   ☐ Judge only

7. Did you testify at the trial?

   ☒ Yes   ☐ No

8. Did you appeal from the judgment of conviction?

   ☒ Yes   ☐ No

---

MOTION
28 U.S.C. § 2255

9. If you did appeal, answer the following:

    (a) Name of court:  **U.S. Court of Appeals for the Ninth Circuit**

    (b) Result:  **AFFIRMED**

    (c) Date of result:  **December 17, 2007**

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?

    ☐ Yes   ☒ No

11. If you answer to 10 was "yes", give the following information:

    (a) (1) Name of court: _____

        (2) Nature of proceeding: _____

        (3) Grounds raised: _____

        (4) Did you receive an evidentiary hearing on your petition, application or motion?

           ☐ Yes   ☐ No

        (5) Result: _____

        (6) Date of result: _____

    (b) (1) Name of court: _____

        (2) Nature of proceeding: _____

        (3) Grounds raised: _____

        (4) Did you receive an evidentiary hearing on your petition, application or motion?

           ☐ Yes   ☐ No

        (5) Result: _____

        (6) Date of result: _____

    (c) (1) Name of court: _____

        (2) Nature of proceeding: _____

        (3) Grounds raised: _____

A. Ground one: **PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO INVESTIGATE HIS DEFENSE AND FAILED TO CALL WITNESSES TO TESTIFY TO HIS INNOCENCE**

Supporting facts (tell your story briefly without citing cases or law): **Counsel did not investigate. Petitioner is innocent of the crimes he is charged and convicted. Petitioner told his attorney that he could prove his innocence by having three separate witnesses testify he was at the arrest location to inspect a car, and that he could not have been the man police witnessed selling drugs, yet counsel never interviewed two of the witnesses, and didn't call the third to testify.**

B. Ground two: _____ **(SEE MEMORANDUM IN SUPPORT)** _____

_____

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____

_____

C. Ground three: _____

_____

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____

_____

_____

D. Ground four: _____

_____

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____

_____

13. If any of the grounds listed in 12 A, B, C and D were not previously presented, state briefly what grounds were not presented, and give your reasons for not presenting them: _____

**Grounds raised are based on ineffective assistance of counsel. The Supreme Court determined such claims are best raised on §2255. MASSARO v U.S., 538 US 500 (2003)**

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

☐ Yes   ☒ No

---

(4) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes   ☐ No

(5) Result: _____

_____

(6) Date of result: _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the results of action taken on any petition, application or motion?

(1) First petition, etc.   ☐ Yes   ☐ No

(2) Second petition, etc.   ☐ Yes   ☐ No

(3) Third petition, etc.   ☐ Yes   ☐ No

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____

_____

_____

_____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully.

**CAUTION:**   If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date. For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you selected one or more of these grounds for relief, you must allege facts in support of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attached herein:

(a) At preliminary hearing: _____

(b) At arraignment and plea: _____

(c) At trial: _____

(d) At sentencing: _____

(e) On appeal: _____

(f) In any post-conviction proceeding: _____

(g) On appeal from any adverse ruling in a post-conviction proceeding: _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?

☐ Yes   ☐ No

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes   ☒ No

(a) If so, give the name and location of court which imposed sentence to be served in the future: _____

(b) Give the date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed sentence to be served in the future?

☐ Yes   ☒ No

**WHEREFORE,** movant prays that the court grant him all relief to which he may be entitled in this proceeding.

_____ *Pro Se* _____
*Signature of Attorney (if any)*

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on

_____3. 4 . 09_____
*Date*

_____
*Signature of Movant*

Delvin Smith
_(Petitioner)_

United States of America
_(Plaintiff)_

**DECLARATION IN SUPPORT OF REQUEST
TO PROCEED IN FORMA PAUPERIS**

I, Delvin Smith _____, declare that I am the petitioner in the above-entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?

   ☒ Yes   ☐ No

   (a) If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer. Federal Correctional Institution, Prison CMS.

   (b) If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received. _____

2. Have you received, within the past twelve (12) months, any money from the following sources?

   (a) Business, profession or form of self-employment?   ☐ Yes   ☒ No
   (b) Rent payments, interest or dividends?   ☐ Yes   ☒ No
   (c) Pensions, annuities or life insurance payments?   ☐ Yes   ☒ No
   (d) Gifts or inheritances?   ☒ Yes   ☐ No
   (e) Any other source?   ☐ Yes   ☒ No

   If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve (12) months: Mother sent me $50.

3. Do you own any cash, or do you have money in a checking or savings account?
   _(Include any funds in prison accounts)_

   ☐ Yes   ☒ No
   If the answer is "yes", state the total value of the items owned: _____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property?
   _(Exclude ordinary household furnishings and clothing)_

   ☐ Yes   ☒ No
   If the answer is "yes", describe the property and state its approximate value: _____

**MOTION**
28 U.S.C. § 2255

CV-67 (2/98)

PAGE 7 OF 8

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support. _____ *None*

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on

_____ 3 - 1 - 0 9 _____
Date

_____
*Signature of Petitioner*

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $ _____ 418.19 _____ on account to his credit at the
_____ FCI Victorville _____ institution where he is confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said institution:

Dated: _____ 3/2/2009 _____

_____
Authorized Officer of Institution

_____
Title of Officer

_____
Authorized by the Act of
July 7, 1955, as amended,
to administer oaths (18
U.S.C. § 4004).

MOTION
28 U.S.C. § 2255

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,  )
       Plaintiff,  )
                   )
   vs.  )
                   )   Case No. 05-CR-986-JFW
DELVIN SMITH,  )
       Defendant.  )
                   )

---

## DECLARATION OF RODNEY BARNELL

I, Rodney Barnell, being of majority age and competent to testify, hereby swear the following facts are true and correct to the best of my personal and firsthand knowledge.

1) On September 1, 2005, Delvin Smith called me to ask me for a ride to go look at cars for sale.

2) Delvin Smith told me that he wanted to go to a few different places around Los Angeles to inspect various cars. I told Smith that I could pick him up at his grandmother's house on East 73rd Street sometime around 6pm. Smith told me he would call me back to confirm 6pm would be a good time for the seller of the first car he wanted to inspect on East 74th Street.

3) Smith did call me back on September 1, 2005, to inform me that 6pm would be a perfect time for me to pick him up.

4) I arrived at Smith's grandmother's house located at 811 East 73rd Street at approximately 6pm to pick him up.

5) When I arrived at 811 East 73rd Street, Smith and another man named Austin Wade were on the front porch of the house.

6) Smith walked out and got into my car. Austin Wade remained at the house on East 73rd Street.

7) I drove Smith to 922 East 74th Street.

8) We arrived at 922 East 74th Street right at 6pm or a few minutes afterwards.

9) When I drove up to the house there were two cars in the driveway at 922 East 74th Street, so I pulled in right behind the last car and was sticking out across the sidewalk and partly in the street.

Declaration of Rodney Barnell
Re: U.S.A.  v. DELVIN SMITH, Case No. 05-CR-986-JFW
Page 2

10)    Smith exited my car and walked up towards the house.

11)    Smith did not go to the front door, but rather walked along the side of the house up the driveway towards the detached garage where I could see another man standing.

12)    While I saw Smith and the other man engaged in what looked like a conversation, two different men came rushing by my car from the street about 3 minutes later, moving in the direction of Smith and the other man.

13)    From where I was sitting in my car, I could not see perfectly clearly because there were two other cars in front of me between my car and the garage where Smith and the other man were standing and where the two newly arriving men were heading. However, I did see the man Smith was talking to start to run to the right, and then within seconds saw Smith head in the same direction to the right.

14)    Both of the newly arrived men began running in the same right direction out of my view altogether.

15)    In less than 15 seconds after all of the men were out of my sight, one of the newly arrived men came back to stand in front of the garage door opening.

16)    I waited a few minutes there, watching the man in front of the garage.

17)    Because I did not see anyone else return to my view after this short wait, I decided to go around the block to see if I could find Smith.

18)    I backed out of the driveway, pulled into the street, and headed towards Central where I turned right towards East 75th Street, then turned right again on East 75th Street. I followed East 75th Street until I got to Wadsworth where I turned right back towards 74th Street.   I  did  not see Smith or the other three men anywhere on those streets, so I decided to continue on to East 73rd Street to look for Smith at his grandmother's house.   I traveled on Wadsworth past East 74th Street until I arrived at East 73rd Street where I turned left. I traveled up East 73rd Street until I arrived at 811 East 73rd Street where I found Austin Wade still on the front porch of the residence.  I yelled out to Wade to ask if he had seen Smith.  Wade said he had not seen him since Smith got into my car in front of that house around 10-15 minutes prior.

19)    I told Wade that I had just come from a few blocks away where Smith looked like he was being chased by some guy.

20)    Wade told me he would stay at that house and wait for Smith while I said I would go back to see if Smith returned to East 74th Street.

Declaration of Rodney Barnell
Re: U.S.A. v. DELVIN SMITH, Case No. 05-CR-986-JFW
Page 3

21)   I drove away from 811 East 73rd Street and headed towards Central
where I turned right on Central and again right on East 74th Street.

22)   I arrived in front of 922 East 74th Street where I pulled over
to the curb across the street from that residence, directly across from
the driveway.

23)   I saw the same man standing in front of the garage at the end
of the driveway of 922 East 74th Street that I had seen there before I left
to find Smith.

24)   Within a few minutes, I saw Smith walking on the street sidewalk
of East 74th Street, coming back towards me and 922 East 74th Street.

25)   Smith was walking on the opposite side of the street from where
I was parked, on the same side of 922 East 74th Street, not alone, but with
a police officer having his badge displayed on a chain in front of him.

26)   I recognized the police officer as one of those men who rushed
past me and my car towards the garage at 922 East 74th Street about 10-15
minutes earlier.

27)   I watched the police officer escort Smith back to the garage at
922 East 74th Street where the other man, I found out later to be another
police officer.

28)   I drove my car back to 811 East 73rd Street and told Austin Wade
what I had just seen at 922 East 74th Street.

29)   After informing Wade of Smith's situation, I went home.

30)   I was never contacted by Smith's lawyer.  But had I been
interviewed by him or his investigator, I would have told him all of this
and agreed to testify to these facts.

I hereby declare under penalty of perjury that the foregoing is true
and correct to the best of my knowledge.

Respectfully Submitted,

RODNEY BARNELL

9-02-08
Date

# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-CR-986-JFW |
| | ) | |
| DELVIN SMITH, | ) | |
| Defendant. | ) | |

---

### DECLARATION OF SHANICE YOUNG

---

I, Shanice Young, being of majority age and competent to testify, hereby declare the following is true:

1)   On September 1, 2005, I was living at 922 East 74th Street in Los Angeles, California.

2)   On September 1, 2005, I was in the process of moving my personal belongings from 922 East 74th Street to another location.

3)   On September 1, 2005, I was trying to sell two cars that were in my driveway at 922 East 74th Street. The two cars were a Cadillac and a Ford. The Ford had a For Sale sign on the windshield with a telephone number listed on the sign.

4)   Both the Cadillac and the Ford were in my driveway the entire day of September 1, 2005.

5)   During the morning hours of September 1, 2005, I received a call from Delvin Smith requesting information about the Ford I was selling.

6)   Once I told Smith the car was still available, he asked if he could set an appointment to inspect the Ford.

7)   Because I was in the process of moving on that day, I told Smith that I would be in and out all day. Smith asked if he could call back to set an appointment time after he checked with his friend who would likely be driving him over to see the car.

8)   Smith did call back and ask whether 6pm would be a good time to inspect the car. I advised Smith that 6pm would be fine. However, I told Smith that I might not be home at 6pm but that there would definitely be someone home to show him the car.

9)   I was not present at my home on East 74th Street at 6pm, but when I returned, I was told that Smith had come to see the car and that he had been arrested near my house for selling drugs.

Declaration of Shanice Young
Re: U.S.A. v. DELVIN SMITH, Case No. 05-CR-986-JFW
Page 2

10)    The Cadillac was non-operable on September 1, 2005, and had been in my driveway for several months without moving. It was important that I have both the Cadillac and the Ford removed from the premises before I changed residences.

11)    I was anxious to get both cars out of the driveway, so I asked Smith to consider making me an offer for both cars.

12)    During 2006, I met with an investigator named Mr. Rash.

13)    Mr. Rash told me that he was working with attorney Errol Stambler on the defense case for Delvin Smith.

14)    During my meeting with Mr. Rash, he took notes.

15)    I told both Mr. Rash and attorney Stambler that I would be willing to testify at trial.

16)    I always expected to hear back from Mr. Rash or attorney Stambler so I could testify, but I never heard from either of them again.

17)    If I had been called to testify, I would have testified to the truth of the above facts.

I declare the foregoing is true and correct to the best of my firsthand knowledge.

Respectfully Submitted,

SHANICE YOUNG                                   9/30/08
                                                  Date

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )
    Plaintiff,                      )
                                    )
vs.                                 )     Case No. 05-CR-986-JFW
                                    )
DELVIN SMITH,                       )
    Defendant.                      )

DECLARATION OF AUSTIN WADE

    I, Austin Wade, being of majority age and competent to testify, hereby declare the following facts to be true and correct to the best of my personal and firsthand knowledge.

    1)    On September 1, 2005, I spent most of the day at 811 East 73rd Street in Los Angeles, California.

    2)    At approximately 6pm on September 1, 2005, while I was on the front porch of 811 East 73rd Street, I was having a discussion with Delvin Smith who told me he was waiting for his friend Rodney Barnell to pick him up so he could go look at a few cars for sale around the neighborhood.

    3)    While having this discussion with Smith, his friend Rodney did pull up to the curb in front of the house, and Smith walked to the car and got in.

    4)    Smith and Rodney drove away seconds later.

    5)    I remained on the front porch and was still there when Rodney came back alone in his car about 10-15 minutes later to ask me if Smith had returned. I told Rodney I had not seen Smith since he left with Rodney 10-15 minutes prior.

    6)    Rodney told me that he was looking for Smith because he saw him being chased from the house where he had taken him to go look at a car. After telling me this fast story, Rodney left again.

    7)    About 10 minutes later, Rodney returned and told me that he saw Smith walking with a police officer on East 74th Street, and that he thought Smith might be in trouble. Then, Rodney left again.

    8)    I later found out that Smith had been arrested, but I never heard from Smith's lawyer or defense investigator. If I had been interviewed by Smith's defense team I would have told them all of this and agreed to testify to these facts.

Declaration of Austin Wade
Re: U.S.A. v. DELVIN SMITH, Case No. 05-CR-986-JFW
Page 2

    I hereby declare under penalty of perjury that the foregoing facts
are true and correct to the best of my knowledge.

                         Respectfully Submitted,

                                     9-02-08

                    AUSTIN WADE                Date

# Inmate Inquiry



| | | | |
|---|---|---|---|
| Inmate Reg #: | 16579112 | Current Institution: | Victorville FCI |
| Inmate Name: | SMITH, DELVIN | Housing Unit: | VIM-C-L |
| Report Date: | 03/02/2009 | Living Quarters: | C01-113L |
| Report Time: | 2:57:52 PM | | |

General Information | Account Balances | Commissary History | Commissary Restrictions | Comments

## General Information

| | |
|---|---|
| Administrative Hold Indicator: | No |
| No Power of Attorney: | No |
| Never Waive NSF Fee: | No |
| Max Allowed Deduction %: | 100 |
| PIN: | 2157 |
| PAC #: | 427219462 |
| FRP Participation Status: | Participating |
| Arrived From: | ATW |
| Transferred To: | |
| Account Creation Date: | 4/25/2002 |
| Local Account Activation Date: | 5/30/2008 3:32:50 AM |

| | |
|---|---|
| Sort Codes: | |
| Last Account Update: | 3/1/2009 6:15:37 PM |
| Account Status: | Active |
| Phone Balance: | $0.00 |

### FRP Plan Information

| FRP Plan Type | Expected Amount | Expected Rate |
|---|---|---|
| Monthly | $25.00 | 0% |

## Account Balances

| | |
|---|---|
| Account Balance: | $48.19 |
| Pre-Release Balance: | $0.00 |
| Debt Encumbrance: | $0.00 |
| SPO Encumbrance: | $0.00 |
| Other Encumbrances: | $0.00 |
| Outstanding Negotiable Instruments: | $0.00 |
| Administrative Hold Balance: | $0.00 |
| Available Balance: | $48.19 |
| National 6 Months Deposits: | $1,214.00 |
| National 6 Months Withdrawals: | $1,166.74 |
| National 6 Months Avg Daily Balance: | $21.84 |
| Local Max. Balance - Prev. 30 Days: | $50.19 |
| Average Balance - Prev. 30 Days: | $13.19 |

*Gneyes. C Sw 3/2/09*

Authorized by the Act of
July 7, 1955, as amended,
to administer oaths (18
U.S.C. § 4004).

# CERTIFICATE OF SERVICE

I, _Delvin Smith_ hereby certify that I have served a true and correct copy of the following:

Motion To Vacate, Set Aside or
Correct Sentence By A Person In
Federal Custody 28 U.S.C § 2255

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, _Houston v. Lack_, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

United States District Court
312 North Spring Street
Los Angeles, California 90012
Attn: Intake/Docket Section

and deposited same in the United States Postal Mail at the United States Penitentiary, California, on this: _____ day of: _____, 2009

16579-112
Reg. No.

Delvin Smith #16579-112
Federal Correctional Institution
FCI VICTORVILLE 1
P.O. Box 5300
Adelanto, California 92301
PETITIONER PRO SE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, )
)                    Case No. 05-CR-0986-JFW
Plaintiff, )
)          MEMORANDUM IN SUPPORT OF MOTION
v. )          TO VACATE, SET ASIDE, OR CORRECT
)          SENTENCE BY A PERSON IN FEDERAL
DELVIN DESHAWN SMITH )          CUSTODY UNDER 28 U.S.C. § 2255
)
Petitioner. )
)

Comes Now, Delvin Smith, petitioner in the above captioned cause of
action and would respectfully submit this memorandum in support of his Motion
to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody
Under 28 U.S.C. § 2255. Petitioner asserts his conviction was obtained only
as a result of ineffective assistance of counsel. This he says in support
thereof:

As an initial matter, petitioner urges this Court's especial notice
that he appears pro se and that Due Process places no greater burden on him
than that he allege facts giving rise to the cause of action, <u>Sanders v.
United States</u>, 373 U.S. 1, 22-23 (1963), facts which if proved would entitle
him to habeas relief, <u>Townsend v. Sain</u>, 372 U.S. 293, 312 (1963), and that
Due Process requires this Court to afford his pleadings a construction that
is sufficiently liberal to embrace claims for habeas relief, <u>Boag v. MacDougall</u>,
454 U.S. 364, 365 (1982), and to treat all claims arising from the facts
alleged whether those claims were expressed or merely implied by the facts
alleged, <u>Bounds v. Smith</u>, 430 U.S. 817 (1977).

- 1 -

FACTUAL BACKGROUND

Petitioner asserted his innocence at every stage of the proceedings. He told his attorneys that he was not a drug dealer, nor had he possessed a firearm on September 1, 2005. Unwilling to enter a plea of guilty to any of the charges against him, petitioner insisted his attorneys do everything within their power to defend him. Petitioner explained his reasons for being at the place located at 922 East 74th Street in Los Angeles, California on September 1, 2005. He told his attorneys that he went there to inspect cars that were for sale. He told counsel that he had just arrived at the location mere moments before police officers came running up the driveway towards him and another man he had just begun speaking to about the cars. He told counsel that he had spent the day at his Aunt's house right up until the time his friend picked him up to give him a ride to make a 6pm appointment to see those cars. Petitioner asked counsel to conduct an investigation into the police officers who were lying about him, and asked counsel to speak with several people who could vouch for his whereabouts and activities during that September 1, 2005, the day of his arrest.

As petitioner went through discovery materials he realized that officers conducting surveillance at 922 East 74th Street had misidentified him as a person selling drugs from inside the garage of that location. Petitioner became more excited and certain he could prove his innocence because he knew very well that he had not been at that location during the times police saw another man there selling drugs. Petitioner told his attorney that his friend Rodney Barnell had given him a ride from his Aunt's house to the East 74th Street location, that before being picked up he was at his Aunt's house with Austin Wade, and that if his lawyer spoke with these two people, they would tell the attorney he was not at 922 East 74th Street when police officers were watching a man selling drugs because he was with them elsewhere. Petitioner

- 2 -

also told his attorney that his story could be verified by speaking with a woman named Shanice Young who lived at 922 East 74th Street, who had spoken with petitioner on September 1, 2005, and who had given petitioner an appointment for 6pm to see cars for sale at that location.

By the time of trial, defense counsel had not spoken with friends or Austin Wade, but counsel had found other witnesses from the neighborhood of East 74th Street who said they had seen petitioner with police one day in September being escorted in handcuffs. Petitioner was told by counsel that these witnesses should be enough to disprove the government's case, and it was with only those defense witnesses available the case went to trial before a jury. Regarding Shanice Young, counsel indicated she would be called to testify on his behalf to verify she had cars for sale at that location and that petitioner had a 6pm appointment to see those cars on September 1, 2005. However, Shanice Young was never called to the witness stand. And petitioner found out later that Young was never told what day she was supposed to appear in court on behalf of petitioner.

Because defense counsel had not spoken to Barnell and Wade there would be no witnesses with firsthand knowledge of petitioner's innocence to testify. And because counsel had not told Young when she should appear in court, there would be no witnesses to verify the purpose of petitioner's visit and presence at 922 East 74th Street on September 1, 2005.

Petitioner insisted the police officers had mistaken him for a suspect they had been conducting surveillance of, or they were lying to make a case. Either way, petitioner was innocent. The trial began and then the government put on a convincing case that defense counsel could not successfully rebut.

### THE GOVERNMENT'S CASE IN CHIEF

Los Angeles Police Department ("LAPD") Officer Matthew Killman testified that on September 1, 2005, he and his partner, Paul Sandate, surveilled 922

- **3** -

East 74th Street (the "location") from an undercover car parked directly across the street. (RT 4/11/05: 125-126, 132).[1] Officer Killman had a clear and unobstructed view of the location. (RT 4/11/06: 133). Officer Killman observed a man in the garage of the location. (RT 4/11/06: 126-127). At approximately 5:15pm, Officer Killman observed a man approach the driveway of the location on a bicycle. (RT 4/11/06: 127, 133). The man yelled towards the garage and the man inside walked out to meet the man on the sidewalk. (RT 4/11/06: 127). The two men engaged in conduct that Officer Killman found to be consistent with the manner in which crack cocaine is sold in South Los Angeles. (RT 4/11/06: 121-125, 129). One of the men returned to the couch in the garage, (RT 4/11/06: 128-129). Approximately five minutes later, a female walked up to the driveway of the location and looked down the driveway and was noticed by the man standing inside the garage and the man walked out to meet her at the sidewalk where the female handed the man money in exchange for an object that resembled rock cocaine. (RT 4/11/06: 130-131). For approximately the next 40 minutes, no additional customers arrived at the location. (RT 4/11/06: 134). During the entire time, Officer Killman did not see any other person at the location. (RT 4/11/06: 135). Officer Killman and his partner exited their car and identified themselves as police officers when the suspect fled back toward the garage. (RT 4/11/06: 135). Office Killman gave chase and ordered the suspect to stop, but the suspect continued to run around the corner of the house into the rear yard. (RT 4/11/06: 135. 137-138). A suspect ran to the rear fence of the yard and stopped, and was then handcuffed. (RT 4/11/06: 138-139). Officer Sandate recovered a gun off the ground near a tree in the yard where officer's had seen a suspect

---

[1] "RT" referes to the reporter's transcript of the proceedings and is followed by the applicable page number.

toss it earlier. (RT 4/11/06: 138-139, 154). During the entire time officer Killman observed defendant, he did not see defendant either pick up or put down a gun. (RT 4/11/06: 158). Officer Sandate searched defendant and found rock cocaine. (RT 4/11/06: 142). Officers walked defendant toward the front of the location and as they looked into the area of the garage where they had observed a suspect previously sitting, they saw a revolver and three large off-white solids that looked like a large amount of rock cocaine, so they entered the garage and recovered the revolver, the cocaine, a digital scale, and some additional ammunition. (RT 4/11/06: 143-144).

On cross-examination and redirect, Officer Killman testified that he arrested another black male who looked similar to this defendant at the same location on September 28, 2005, for dealing drugs. (RT 4/11/06: 162-165).

The government's second witness was LAPD officer Paul Sandate. Officer Sandate was working with officer Killman on September 1, 2005, and also saw a suspect sitting on a couch in the garage of the location, and saw the same two hand-to-hand transactions. (RT 199-203). Officer Sandate saw a suspect drop the firearm in the rear yard of the location. (RT 4/11/06: 206-207). Officer Sandate did not see any persons other than the suspect and his two customers at the location that day. (RT 4/11/06: 207). Officer Sandate also corroborated Killman's testimony regarding the finding of crack on defendant and the discovery of the revolver, cocaine, scale, and ammunition found in the garage. (RT 4/11/06: 210-213).

                          THE DEFENSE CASE

The defense theory was that defendant was at the location to buy a car and was mistakenly arrested when another individual fled the location at the announcement of police officers on the scene. Defendant called a two witnesses, but none of them could be sure of the date of the events they testified to have witnessed.

                              - 5 -

Defendant's first witness was Chris Pope. Pope testified that he lives on 75th Street and that he saw the defendant being escorted by undercover police officers through an alley near 75th Street sometime in September, 2005. (RT 4/11/06: 225-230). On cross-examination, Pope could not remember the time of day he saw this, but he could clearly remember it happened on September 20th. (RT 4/11/06: 230-231).

The defense's next witness was Richard Mitchell. Mitchell testified that on an unknown day in September, 2005, he was with Chris Pope and saw defendant in handcuffs walking in the area of an alley near 75th Street. (RT 4/12/06: 21-22, 24).

Defendant then testified. He denied committing any of the offenses, but that he had been arrested on September 1, 2005, on 75th Street after running from 74th Street. (RT 4/12/06: 170) Defendant claimed that he went to 922 East 74th Street to buy a car, and that there were cars in the driveway of 922 East 74th Street. (RT 4/12/06: 29, 31, 36). Defendant testified he saw Rodney Franklin at 922 East 74th Street on September 1, 2005, and that he was talking with Franklin when Franklin started running away from two people in plain clothes with guns out, so when he saw Franklin running he instinctively ran, too. (RT 4/12/06: 31-32). On cross-examination, defendant testified he  ran away hopping fences and a brick wall as he tried to evade the person chasing him with a gun. (RT 4/12/06: 37-38). Defendant testified he had never been to 922 East 74th Street before September 1, 2005. (RT 4/11/06: 40-41). Defendant admitted carrying $1,098 dollars in his sock, but denied carrying any cocaine. (RT 4/12/06: 41). Defendant also testified that it would be impossible for him to hold the large gun found in the yard by holding it in the waistband of his baggy pants. (RT 4/12/06: 40).

Defendant's mother, Sharon Tyson, testified she had given her son $800 to buy a car, and also stated she knows that her son keeps his money in his

- 6 -

sock. (RT 4/12/06: 48-49).

Defendant's last witness was Eyisha Armstrong. Defense counsel asked Ms. Armstrong, "Do you recall an incident on September 1, 2005, in the late afternoon?" Ms. Armstrong replied, "Yes, sir." (RT 4/12/06: 67) Armstrong testified that she saw defendant walking with one officer down 75th Street. (RT 4/12/06: 67-69).

## FACTUAL DISPUTE AT TRIAL

The dispute at trial was that the government offered defendant was alone at 922 East 74th Street selling crack from the garage at that location. And, that when officers attempted to approach defendant he fled to the rear yard where he tossed a large handgun from his waistband then immediately stopped by the rear fence and was apprehended, searched, and arrested. Once defendant was handcuffed, he was walked back to the garage where other contraband was discovered.

The defense asserted that it was not the defendant who had been seen selling drugs at the location, but that he did run away from police and ran a couple of blocks before he was apprehended and handcuffed. The defense had no way of proving the officers were wrong about their identification of the suspect dealing from the garage, other than putting on witnesses who testified they saw defendant out in the local streets being escorted by law enforcement officers, not confined to the rear yard and garage of the location as the officers testified, but rather a distance away.

The defense did not dispute that a large handgun was found in the rear yard, or that drugs and another gun were found in the garage, only that it was a case of mistaken identity. In order to bolster the government's case, the officers testified they saw the defendant toss the handgun in the rear yard and that they found crack on the defendant's person. This simply was not true. Defendant was a scapegoat for the police. But the defense failed to

- 7 -

rebut the government's presentation of powerful and compelling police officer testimony. However, had defense counsel conducted a meaningful investigation, the result would have been different. Here's why.

COUNSEL'S INVESTIGATION WAS LACKING IN SUBSTANCE

Defendant/Petitioner Delvin Smith received ineffective assistance of counsel. Although Smith proclaimed his innocence, defense counsel persisted in trying to convince him to plead guilty. Smith told counsel that there were people who could prove he was innocent. Smith told counsel that he was not at 922 East 74th Street any earlier than 6pm when he was meeting someone he had an appointment with to see cars for sale. He told counsel that for several hours before 6pm he had been at his grandmother's with his friend Austin Wade, and that it was nearly 6pm when another friend named Rodney Barnell picked him up at his Aunt's house to drive him to 922 East 74th Street so he could inspect the cars for sale. Smith told counsel that he was at 922 East 74th Street when police arrived, but that he had managed to run a few blocks away before being caught and handcuffed, then walked back along the streets towards 74th Street with police escort.

Defendant's family and friends canvassed the neighborhood in search of witnesses who might have seen defendant being arrested on September 1, 2005. It was defendant's friends and family who told defense counsel they had found Chris Pope, Richard Mitchell, and Eyisha Armstrong, all people who had seen defendant with police officers on the streets near 75th Street sometime in September of 2005. Only after counsel was informed of the existence of these witnesses, did counsel send an investigator out to conduct face to face interviews. Had it not been for defendant's family and friends trying to help him, defendant would have been left with no defense witnesses at all, and only a lawyer who was trying to convince him to plead guilty. The defendant's lawyer never attempted to contact Austin Wade or Rodney Barnell.

- 8 -

Austin Wade and Rodney Barnell were witnesses who possessed firsthand knowledge of defendant's innocence, yet counsel never spoke to either of them. It was only witnesses who reached out to counsel that ever received any attention. Only because defendant's family and friends and the three found local witnesses persisted in calling counsel did any of these witnesses get interviewed by the defense investigator.

It turns out that two of the witnesses, both Chris Pope and Richard Mitchell could not be certain of the exact date they had seen defendant being escorted by officers on the street sometime in September of 2005. On the contrary, Austin Wade and Rodney Barnell knew exactly what day and what time they were with defendant and when they had last seen defendant as well as where and when defendant was seen in handcuffs off of the property where that drug dealing was occurring on September 1, 2005.

Defendant was under the impression that counsel would speak with both Wade and Barnell to confirm his innocence. It was not until the time of trial that defendant found out the bad news that counsel had never spoken with Wade or Barnell, and that they would not be testifying on behalf of the defense.

After conviction, sentencing, and appeal, defendant's family and friends were able to find Rodney Barnell, Austin Wade, and Shanice Young, who all have provided sworn declarations to this court. These three individuals have supplied statements that were never heard by the jury because counsel failed to call them to the witness stand.

Defendant did not receive a fair trial because he was denied effective assistance of counsel. Had the defense been armed with the ammunition of the testimony these witnesses are willing to give under oath in a court of law, this defendant would very likely have been found not guilty by the jury in this case.

- 9 -

## INEFFECTIVE ASSISTANCE OF COUNSEL

To establish a prima facie claim of ineffective assistance of trial counsel, a defendant must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Williams v. Taylor, 529 U.S. 362, 390 (2000); Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000); Strickland v. Washington, 466 U.S. 668, 687 (1984). Defendant bears the burden of establishing both components. Williams, 529 U.S. at 390-91; Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Strickland, 466 U.S. at 687. "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990)(citing Strickland, 466 U.S. at 688). Prejudice "focuses on the question whether counsel's performance renders the results of the trial unreliable or the proceedings fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Williams, 529 U.S. at 393 n. 17.

To establish deficient performance, a defendant must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; Karis v. Calderon, 283 F.3d 1117, 1130 (9th Cir. 2002). In reviewing trial counsel's performance, the court will "strongly presume[] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Only if counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will a defendant meet this initial burden. Kimmelman, 477 U.S. at 386; Strickland, 466 U.S. at 690.

If a defendant makes this showing, he must then establish there is a "reasonable probability that, but for counsel's unprofessional errors, the

result of the proceedings would have been different." Strickland, 466 U.S.
at 693; Williams, 529 U.S. at 391.  The errors must not merely undermine
confidence in the outcome of the trial, but must result in a proceeding that
was fundamentally unfair. Williams, 529 U.S. at 393 n.17; Lockhart, 506 U.S.
at 369.  However, a court need not determine whether counsel's performance
was deficient before examining the prejudice suffered by the defendant as
the result of the alleged deficiencies. Strickland, 466 U.S. at 687 ("If it
is easier to dispose of an ineffectiveness claim on the ground of lack of
sufficient prejudice, ... that course should be followed."); Smith, 528 U.S.
at 286 n. 14 (same).

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
WHEN COUNSEL FAILED TO INVESTIGATE HIS DEFENSE AND
FAILED TO CALL WITNESSES TO TESTIFY TO HIS INNOCENCE

The Sixth Amendment provides that "[i]n all criminal prosecutions, the
accused shall enjoy the right ... to have Assistance of Counsel for his defence."
U.S. Constitution, Amendment VI.  "[T]he 'core purpose' of the counsel guarantee
is to assure aid at trial, 'when the accused [is] confronted with both the
intricacies of the law and the advocacy of the public prosecutor.'" United
States v. Gouveia, 467 U.S. 180, 189-90 (1984)(quoting United States v. Ash,
413 U.S. 300, 309 (1973); Maine v. Moulton, 474 U.S. 159, 168 (1985).

Defense counsel has a "duty to make reasonable investigations or to
make a reasonable decision that makes particular investigations unnecessary."
Strickland, 466 U.S. at 691;  Turner v. Duncan, 158 F.3d 449, 456 (9th Cir.
1998).  This includes a duty to investigate the prosecution's case and **to
follow up on any exculpatory evidence**. Morrison, 477 U.S. at 385; United
States v. Tucker, 716 F.2d 576, 583 n. 16 (9th Cir. 1983)(bold and underline
emphasis added).  Thus, a lawyer's performance is deficient if **evidence exists
that might show a defendant's innocence or raise sufficient doubt to undermine
confidence in a guilty verdict, and the lawyer did not investigate the evidence.**

- 11 -

Lord v. Wood, 184 F.3d 1083, 1093 (9th Cir. 1999)(bold and underline emphasis
added); Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999). To show prejudice,
petitioner must demonstrate that further investigation would have revealed
favorable evidence. Ceja v. Steward, 97 F.3d 1246, 1255 (9th Cir. 1996);
Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995).

In this case before the court, petitioner Delvin Smith was convicted at
a trial. Before trial, Smith urged his lawyer Errol Stambler to interview
particular witnesses who had firsthand knowledge of Smith's actual innocence.
These witnesses, A) Shanice Young, B) Rodney Barnell, and C) Austin Wade,
have provided Smith with sworn declarations for submission with his §2255
motion. The declarations are attached as Exhibits A, B, and C, respectively.

From the very outset of this case, Smith asserted his innocence to defense
counsel. Smith informed counsel that it was not him who police officers
claimed to have witnessed selling drugs from the location at 922 East 74th
Street in Los Angeles, California. Smith told counsel that he did go to
that address on the date police officers observed the suspicious activity,
but that Smith's presence there was soley for the purpose of inspecting cars
for sale at that property with the intention of buying a Ford if a deal could
be negotiated.

Smith explained to counsel that he had been driven from his Grandmother's house
nearby to the 922 East 74th Street location by his friend Rodney Barnell,
who knew for certain Smith was not a drug dealer and could not have been
the person police officers witnessed conducting hand to hand transactions
on September 1, 2005, because Barnell and Smith were not at the suspect location
during that precise time officers witnessed this activity. Barnell has provided
a sworn declaration that testifies to the fact he was present when police
officers ran past his parked car in pursuit of two men. One of the men was
apparently Smith, while the other was a man Barnell had never seen before,

but, according to Barnell's declaration, was the man he saw inside the garage

at the suspect location with Smith when the officers ran past Barnell's car

towards that garage. Barnell further testifies that he saw both men in the

garage run away from the police. After waiting a brief period of time, Barnell

drove around the neighborhood looking for Smith, and in fact returned to

Smith's ~~Aunt~~'s home to see whether Smith had gone there to escape the police

chasing him. Barnell did not find Smith at the Aunt's house, but did see

a man named Wade Austin on the porch of the house, who when asked about Smith

informed Barnell that he had not seen Smith since Barnell had picked him

up at the house earlier. Barnell testified that he drove back to the 922

East 74th Street address after leaving the ~~Aunt~~'s place, where Barnell waited

until he actually saw Smith being escorted by a police officer with his badge

prominently displayed, walking on the opposite side of the street from where

Barnell was parked, heading back towards 922 East 74th Street where Barnell

watched Smith being taken right back into the garage at that location.

Smith told counsel that Barnell had communicated all of this information

to Smith's family, and that Barnell was willing to meet with counsel to give

his statement and to offer himself as a witness to testify at trial, yet

at no time did counsel or his investigator contact Barnell to conduct any

sort of interview on behalf of the defense.

Failure to follow up on this exculpatory evidence demonstrates counsel

performed below an objective standard of reasonableness with regards to his

preparation for trial on defendant's behalf. But this was not the only witness

counsel was informed could vouch for Smith.

Smith told defense counsel that the police were mistaken in identifying

him as the person they saw selling drugs from the garage area of that location

at 922 East 74th Street. Smith told counsel that he was not selling drugs

on 74th Street, and that he could prove it by asking a man named Austin Wade

- 13 -

about the time Smith and Wade had spent together at Smith's Aunt's house
for the part of the day immediately preceding Smith's arrest.  Smith could
not be in two places at the same time.  According to police officers who
testified at trial, they were conducting surveillance at 922 East 74th Street
and had seen a black man conducting hand to hand drug sales in front of their
very eyes for a period of time before officers decided to approach the person
engaged in this activity.  It was impossible for the person under surveillance
to be Smith, because Smith had been spending time at his Aunt's [Grandmother's] house with
Austin Wade all the way up until the time Rodney Barnell arrived to drive
Smith over to 74th Street to inspect the car for sale he had a 6pm appointment
to inspect.  Wade was with Smith right up until Barnell pulled up to the
curb in front of Smith's Aunt's [Grandmothers] house, and witnessed Smith get into the car
with Barnell and drive off at right around 6pm.  Austin Wade has submitted
a declaration swearing to the fact he was with Smith until nearly 6pm.  In
Wade's declaration, he testifies further that approximately 10-15 minutes
after Smith and Barnell drove on from the curb in front of him, Barnell had
returned to ask Wade whether Smith had come back to his Aunt's [Grandmother's] house.  Wade
also states in his declaration that after another 10-15 minutes had passed,
Barnell came back to let him know Smith had been arrested at that place Smith
went to go look at the cars.

Wade's declaration provides corroboration with Barnell's declaration.
Yet defense counsel never interviewed either of these valuable witnesses,
although Smith practically begged him to do so.

Another declaration deserving consideration is the sworn declaration
submitted by Shanice Young.  This witness swears that she spoke with Smith
on September 1, 2005, and that she arranged for Smith to be shown a car at
her house located at 922 East 74th Street at 6pm.  Young swears she told
Smith that if she wasn't at the residence at 6pm, it would not be a problem

- 14 -

because her friend Rodney Franklin would definitely be there to show Smith the car, assuring Smith that Franklin would either be in the house or in the garage.

A dispute at trial was that officers testified they had a clear view up through the driveway into the garage on September 1, 2005, that there were no cars parked in the driveway to obstruct their surveillance, which contradicted Smith's version of the landscape on that day.  Smith asserted that the cars he was at that location to inspect were parked in the driveway between the street and the garage.  In Young's sworn declaration, she states that there were in fact two cars parked in her driveway at 922 East 74th Street on September 1, 2005, and that they had been parked in the driveway the entire day.  Young further states that one of the cars, a Cadillac was non-operable on September 1, 2005, and had been in her driveway for several months without moving.  These sworn statements by Young directly contradict the testimony of the police who were conducting surveillance on September 1, 2005.

Although Young states in her declaration that she spoke with a defense investigator named Mr. Rash, and that Rash took notes during the interview, she states she expected to hear back from Rash or the defense lawyer so that she could testify to the truth of what she was certain about regarding her two cars in the driveway and the fact that she left her friend Rodney Franklin at the residence to show Smith the cars on September 1, 2005.  However, Young never heard from anyone related to Smith's defense after that short interview with investigator Rash.

The importance of these three witnesses is that a close look at each of the separate declarations corroborate the others on vital facts.  All of the declarations specify that Smith had a 6pm appointment to see cars at 922 East 74th Street.  Both Barnell and Young state there were two cars

in the driveway at 922 East 74th Street on September 1, 2005, the same day

of the 6pm appointment and the same day of Smith's arrest. Both Barnell

and Wade state they were with Smith just before 6pm on September 1, 2005,

not at 922 East 74th Street, but either at Smith's grandmother's home or in the

car on the way to inspect the cars at 922 East 74th Street. This evidence

exists and was available to defense counsel for presentation at trial had

counsel done as Smith asked him to do, specifically, interview these people

and call them to the witness stand to testify. Had the jury heard testimony

from these three witnesses, they might very well have rendered a not guilty

verdict. This evidence, at the very least, raises sufficient doubt to undermine

confidence in the guilty verdict.

Strickland underscores the requirement for defense counsel to act as

an advocate for their clients. The Court mandated the proper standard for

attorney performance is that of reasonably effective assistance. Counsel's

function in representing a criminal defendant is to assist defendant, and

hence counsel owes the client a duty of loyalty. From counsel's function

as assistant to defendant derive the overarching duty to advocate defendant's

cause and more particular duties to consult with defendant on important decisions

and to keep defendant informed of important developments in the course of

the prosecution. Defense counsel has a duty to bring to bear such skill

and knowledge as will render the trial a reliable adversarial testing process.

Counsel's performance in this case was deficient. The Supreme Court

has determined that one additional day in prison should be considered as

prejudice to a defendant. Glover v. United States, 531 U.S. 198 (2001).

Smith is innocent of the charges against him. He has maintained his

claim of innocence throughout the entire course of the proceedings. He told

his attorney that he was innocent and that he could prove it. He told his

attorney who he was with on September 1, 2005, that he was not at 922 East

74th Street for any other purpose than to inspect a car that was for sale there in the driveway. He told his attorney that the people he was with were witnesses to his innocence. Yet instead of pursuing the three most informed witnesses as to the events of September 1, 2005, the attorney put other witnesses on the stand during the defense portion of trial who could not even remember the exact dates of the events they were testifying they had witnessed. The inferior testimony counsel chose to put before the jury served only to provide the prosecutor with ammunition for use in closing arguments, wherein the prosecutor pointed out how each and every defense witness, other than Smith, couldn't remember specific dates, and inferred the witnesses were therefore unreliable, irrelevant to the case, and not credible enough to warrant the weight the defense needed to overcome the testimony of officers present at the scene of Smith's arrest. Counsel's ineffective assistance rendered the results of the trial unreliable and the proceedings fundamentally unfair.

WHEREFORE, petitioner prays this court enters an order vacating both the conviction and sentence in this case, remands the case back for a new trial, or in the alternative, order an evidentiary hearing to provide Smith with an opportunity to develop the facts for the record that entitle him to the relief sought.

Respectfully Submitted,

3 -1 ~ 0 9
Date

DELVIN DESHAWN SMITH
Petitioner Pro Se



**TERRY NAFISI**

District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8 Los
Angeles, CA 90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Wednesday, March 18, 2009

DELVIN DESHAWN SMITH
#16579-112
P. O. BOX 5300
ADELANTO, CA 92301

Dear Sir/Madam:

A ☐ Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number

A X Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case number **CR05-1881-JFW**    and also assigned the civil case number    **CV09- 1881 JFW**

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:

X District Court Judge __John F. Walter_____ _____ _____

X Magistrate Judge _____ **Stephen J. Hillman** _____ _____

at the following address:

X  U.S. District Court
312 N. Spring Street
Civil Section, Room G-8
Los Angeles, CA  90012

Ronald Reagan Federal
Building and U.S. Courthouse
411 West Fourth St., Suite 1053
Santa Ana, CA  92701-4516
(714) 338-4750

U.S. District Court
3470 Twelfth Street
Room 134
Riverside, CA 92501

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your address of record is returned undelivered by the Post Office, and if the Court and opposing counsel are not notified in writing within fifteen (15) days thereafter of your current address, the Court may dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court

By: CSAWYER
_____
Deputy Clerk

CV-17 (01/01)       **LETTER re FILING H/C PETITION or 28/2255 MOTION**